UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **SANDRA ANGEL, Individually and on behalf of all similarly situated persons,** ) ) ) **Plaintiff,** ) ) v. ) ) **GOODMAN MANUFACTURING COMPANY, L.P.,** ) ) ) ) **Defendant.** ) | **Case No. 07-CV-0462-CVE-FHM** |

## OPINION AND ORDER

Now before the Court is Plaintiff's Amended Motion and Supporting Brief for Class Certification (Dkt. # 30) and Defendant's Motion for Summary Judgment and Memorandum in Support (Dkt. # 40). Plaintiff asks the Court to certify a class of all persons and entities that own or owned an air conditioner manufactured by Goodman Manufacturing Company, L.P. ("Goodman") between March and September 2000 and to which an allegedly defective paint was applied to the aluminum fins. Dkt. # 30, at 16. Defendant asserts that it is entitled to summary judgment on the merits of plaintiff's claim for breach of express warranty and the issue of class certification is moot.

**I.**

Capital Assets, Inc., a property management company in Tulsa, Oklahoma, purchased a Goodman air conditioner on August 28, 2000 and installed it at an apartment complex owned by Sandra Angel. The air conditioner came with a five year warranty which stated:

> Except as noted in the Exclusion Section herein, the parts of the air conditioning product(s) described on the reverse side of this certificate is (are) warranted against defects in material or workmanship under normal use and maintenance (a) for a period of five (5) years from the installation date or (b) for a period of sixty-three (63) months from the date of manufacture if the installation date cannot be verified.

> We will exchange any warranted defective part upon its presentation to our distributor by a certified or licensed technician.

Dkt. # 40-2, at 59. Based on the unit's serial number, Goodman has determined that plaintiff's unit was manufactured in June 2000. Dkt. # 40, Ex. B, at 2-3. Plaintiff's warranty expired in either August or September 2005[1] and plaintiff did not make a warranty claim to Goodman or anyone in the distribution chain during the warranty period. Plaintiff alleges that, during April 2006, she began having problems with her air conditioner and she claims that she has requested additional maintenance on the unit since April 2006.

In 2002, Goodman filed a lawsuit against its paint supplier, American Coatings, L.P. ("American Coatings"). Goodman alleged that it used a paint manufactured by American Coatings to paint the aluminum fins of approximately 789,000 air conditioners manufactured between March and September 2000. The paint was called "Goodman Black." Goodman initially sought over $81 million in damages and alleged that every air conditioner manufactured between the specified dates was defective. Goodman's expert witnesses, Darlene Brezinski, Ph.D., and Lori Streit, Ph.D, opined that Goodman Black would cause some degree of corrosion to the aluminum fins of each air conditioner to which it was applied. In her deposition, Dr. Brezinski testified that:

Q.  Okay. Your statement in paragraph number 2 is that "the coating as formulated will begin the dehydro" -- I'm not saying this right.
A.  Halogenation.
Q.  -- "process as it is coming out of the bake oven."

---

[1] The summary judgment record does not contain any evidence showing when the air conditioner was installed, and this will affect the length of the warranty in this case. If the installation date can not be verified, plaintiff's warranty expired 63 months from the date of manufacture, or September 2005. If the installation date were the same as the purchase date, plaintiff's warranty would have expired on August 28, 2005. However, as will be discussed below, it is not relevant to the Court's ruling on defendant's motion for summary judgment whether the warranty ended in August or September 2005. See infra, at III(A).

2

> A. That's my belief.
> Q. Okay. And that will happen on every unit painted in this manner --
> A. That is my belief.
> Q. -- with this coating?
> A. That is my belief.
> Q. And so all 830,000 units that are in the field that have been painted with the Goodman Black will fail ultimately?
> A. I believe that, because there were no anticorrosive agents in that coating, yeah.
> Q. Okay.
> A. I really do believe that.
> Q. Right. You believe that at some point and to some degree they will all fail due to this breakdown?
> A. That is correct.

Dkt. # 30, Ex. C, at 2. Dr. Streit also testified that corrosion caused by Goodman Black could manifest at any time and she believed that every air conditioner painted with Goodman Black would experience some corrosion:

> Q. At some point does the corrosion reaction stop, or does it just keep going with what we've got? We've got Goodman Black paint. We have got the aluminum fins.
> A. And you have acid trapped in between. It will continue.
> Q. It does continue.
> A. It will continue, yes.
> Q. And that can be exacerbated by some means of those variables we spoke about?
> A. Clearly.
> Q. Do you have any idea or can you calculate or measure in any way how long it takes for that acid to first emerge, first start breaking through the coating?
> A. No. Again you're getting back to dating the corrosion, and there's really no way to do that.
>
> . . .
>
> Q. If we were to scour the countryside and find one of the units that didn't show any corrosion, would it be your expectation that ultimately it will still show that corrosion at some point?
> A. If it's this formulation, I think that's true.
> Q. There's no point of years that you will say you've past the point of it emerging now?
> A. I don't see that, no.

Dkt. # 40, Ex. D, at 2-3.

During the American Coatings litigation, Gary Clark, Goodman's Vice President of Marketing, testified about procedures that Goodman employed during "catastrophic" equipment failures:

> Q. What would be a catastrophic failure?
> A. Let's say a failure at greater than five [percent] -- let's just use -- it's a gray area and it varies. But let's just say a failure rate greater than five percent, we would tend to call that catastrophic, at which point we would put service policies into place that would enhance the standard warranty in these cases where we have known defects.
> Q. So when you're in a situation where you believe there's a problem that you've recognized and you believe may affect this particular unit in advance, you would tell the unit or the homeowner, whoever bought it, that in addition to the standard Goodman warranty, we know about this problem and we'll try to help you with that as well?
> A. Typically it's not the homeowner. Typically it's up to our distribution and our dealer base. So that when they are called out and service situations, they understand that we know that there's a broad problem and that there is a special program to handle this broad problem.
>
> . . .
>
> Q. Was it already classified as a catastrophic situation when you arrived at Goodman?
> A. Yes.

Dkt. # 47, Ex. A, at 5. Clark explained that the air conditioners were sold with a "parts only" warranty, and that labor would not be covered under the warranty. He testified that Goodman would most likely replace the coil in the air conditioning unit if a customer complained about corrosion or "white rust" caused by defective Goodman Black paint. Id. at 8. However, he stopped short of stating that Goodman had decided to extend any customer's warranty or had decided on an affirmative plan of action to deal with defects caused by Goodman Black. Plaintiff also cites the

deposition testimony of Richard Whittington, Manager of Technical Services for Goodman, who testified about the warranties at issue in this case:

> Q. Now, do you understand the current warranty on the subject units to be five years?
> A. I think there is a split on these. There is some 5 and some 10 year. I am not sure just when the date break is for that. But most of them are five years.
> Q. Okay. Is there any contemplated plan or do you have a contemplated plan in place that after five years, which would put you in like 2005, that the remediation for white dust, you'll stop doing it because you'll be out of the warranty period?
> A. No. It becomes kind of an individual consideration at that point in time. What is likely scenario is you have a 150 unit or a 63 unit complex with these units in them. Let's say they are in year seven, and they are having significant failure rates on these, the fins are deteriorating. We are going to step up to the plate and take care of the customer. If we don't we just walk away from the business.

Dkt. # 46-6, at 16. Goodman eventually settled its case against American Coating for substantially less than $81 million, or for a little more than the cost of the Goodman Black paint. Goodman's current data shows that it repaired or replaced the coil in only .36 % of the units painted with Goodman Black. Dkt. # 38, at 12; Dkt. # 38-2, Ex. D, at ¶ 10.

Angel filed this lawsuit on behalf of herself and other similarly situated consumers allegedly harmed by Goodman's refusal to repair or replace air conditioner units painted with Goodman Black. The second amended class action complaint does not contain any factual assertions concerning the manifestation of a defect in her air conditioner. Instead, plaintiff alleges that the aluminum fins of every air conditioner painted with Goodman Black are corroding and, whether a problem with her air conditioner has actually occurred, she has suffered a legally cognizable injury. Dkt. # 24, at 3-8. She argues that Goodman's allegations and expert testimony from the American Coatings litigation show that a problem exists on a class-wide basis, and she relies heavily on statements by Goodman's experts from the previous litigation to support her claims.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III**.

Defendant asserts three bases for summary judgment in its favor: (1) plaintiff's air conditioner did not manifest a defect during the warranty period; (2) plaintiff did not provide pre-suit notice of a breach of warranty claim to Goodman as required by Texas law; and (3) plaintiff failed to comply with the express terms of the warranty, because she did not present the air conditioner or defective part to Goodman through a certified or licensed technician while the warranty was in effect.[2] Plaintiff responds that Goodman implicitly extended the warranty for all air conditioners painted with Goodman Black through Clark's and Whittington's deposition testimony and notice is not a required element of a warranty claim under Texas law. Plaintiff does not clearly address defendant's factual argument that the express terms of the warranty required her to present her claim to defendant while the warranty was in effect.

**A.**

Plaintiff's warranty covered "defects in material or workmanship" for a period of five years from installation, if the date of installation could be confirmed, or for 63 months, if the installation date could not be confirmed. Goodman has tracked the serial number for plaintiff's air conditioner and determined that it was manufactured in June 2000. At this time, the parties have not provided evidence establishing the date of installation. Giving plaintiff the benefit of the doubt and using the longer warranty period, it appears that her warranty expired in September 2005. Plaintiff purchased her air conditioner through an apartment management company on August 28, 2000, but the air conditioner did not require any maintenance until April 2006. The parties do not dispute that

---

[2]   The parties agree that Texas law applies to plaintiff's breach of warranty claim under the choice of law analysis set forth in Ysbrand v. DaimlerChrysler Corp., 81 P.3d 618 (Okla. 2003).

plaintiff's air conditioner did not require service or repair during the warranty period and, unless plaintiff can show that Goodman extended the warranty, defendant argues that plaintiff's breach of warranty claim is barred under Texas law.

Goodman asserts that an essential element of a breach of warranty claim under Texas law is that an "affirmation of fact or promise became a part of the basis of the bargain." Morris v. Adolph Coors Co., 735 S.W.2d 578, 587 (Tex. App. 1987). The Texas Supreme Court has explained that the "'[b]asis of the bargain' loosely reflects the common-law express warranty requirement of reliance." Compaq Computer Corp. v. Lapray, 135 S.W.3d 657, 677 (Tex. 2004) (quoting American Tobacco Co. v. Grinnell, 951 S.W.2d 420, 436 (Tex. 1997)). Plaintiff admits that she was not aware of Clark's or Whittington's deposition testimony from the American Coatings litigation and there is no factual basis to conclude that plaintiff relied on their statements. However, plaintiff suggests that "no particular reliance need be shown" and, even if she was not aware of the cited deposition testimony, she should still be permitted to rely on this evidence to show that a genuine issue of material fact exists that requires denial of defendant's motion for summary judgment. Dkt. # 46, at 8. However, plaintiff's argument would effectively read the "basis of the bargain" element out of a breach of express warranty claim and the case she cites directly contradicts her argument. See PPG Indus., Inc. v. JMB/Houston Centers Partners Limited Partnership, 146 S.W.3d 79, 99 (Tex. 2004) ("a statement cannot be a basis of the bargain if one of the parties does not know about it."). Under Texas law, plaintiff must show that a factual statement or representation was part of the basis of the bargain before she can rely on such statements to extend the length of her warranty.

Plaintiff argues that a genuine issue of material fact precludes summary judgment on the basis that her warranty expired before a defect arose. She cites Clark's and Whittington's deposition

8

testimony as evidence that Goodman extended the warranties for her air conditioner because of the corrosive effect of Goodman Black paint. However, the deposition testimony simply establishes that Goodman intended to take care of affected customers even if a customer's warranty had already expired, but Goodman's decision to repair or replace a damaged coil or aluminum fins was an "individual consideration." Dkt. # 46-6, at 16. Whittington, the Goodman employee overseeing repairs from corrosion caused by Goodman Black, denied that Goodman extended any customer's warranty or adopted a specific plan to deal with part failures allegedly caused by Goodman Black. Id. Plaintiff has not produced any evidence suggesting that either Clark or Whittington were authorized to extend the warranty period on behalf of Goodman or that Goodman took any action based on the deposition testimony. The Court finds that neither Clark's nor Whittington's deposition testimony creates a genuine issue of material fact concerning the length of plaintiff's warranty.

The evidence shows that plaintiff's warranty expired around August or September 2005 and a breach of warranty claim did not accrue during that time period. See PPG Indus., 146 S.W.3d at 93 (explaining that a buyer's express warranty claim for a five year warranty was limited to defects that arose within the five year warranty period). Therefore, plaintiff's claim is barred by the express terms of the warranty, because her warranty expired before a defect in her air conditioner arose.

**B.**

Defendant argues that plaintiff did not notify Goodman or any entity in the distribution chain of a defect at any time before filing her lawsuit and, even if plaintiff's claim arose while the warranty was in effect, her claim is barred under Texas law. Although Texas law is somewhat unclear, there is sufficient statutory and case law for this Court to determine whether notice is an essential element of a breach of warranty claim under Texas law. This is a purely legal issue

9

because plaintiff admits that she did not notify Goodman or anyone else of a defect before filing this lawsuit. Dkt. # 40-2, at 53 (plaintiff's supplemental response to an interrogatory from defendant admitting that she has "not given any notice directly to any person or entity" other than filing her lawsuit).

Plaintiff argues that the Texas Supreme Court has declined to impose a notice requirement to remote manufacturers in breach of warranty cases and this should be interpreted as an affirmative finding that notice is not required under Texas law. She cites two Texas Supreme Court cases in which that court reserved judgment on whether notice to a remote manufacturer is required to proceed with a breach of warranty claim. See Compaq Computer, 135 S.W.3d at 674 n.14 ("Finding no reversible error, we refused the writ of error in Wilcox, expressly reserving judgment on the question of whether a buyer must notify a remote seller-manufacturer of an alleged breach of warranty within a reasonable time. . . . We have not since decided the issue."); Wilcox v. Hillcrest Memorial Park of Dallas, 701 S.W.2d 842, 843 (Tex. 1986) ("while we acknowledge the conflict between the court of appeals' decision in this case and the El Paso court of appeals decision in Vintage Homes, Inc. v. Coldiron, 585 S.W.2d 886 (Tex.Civ.App.-El Paso 1979, no writ) on the question of whether a buyer must notify a remote seller-manufacturer of an alleged breach of warranty within a reasonable time, we reserve judgment on this question."). Neither of these decisions suggest that the Texas Supreme Court ruled on the issue of notice to a remote manufacturer and, therefore, the Court must refer to Texas statutory and decisional law to resolve this issue.

Texas' version of the Uniform Commercial Code clearly states that "[w]here a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have

discovered any breach notify the seller of breach or be barred from any remedy . . . ." TEX. BUS. & COM. CODE ANN. § 2.607(c)(1) (1994). The Texas Court of Appeals has interpreted section 2.607 to require a buyer to notify a seller of an alleged defect before proceeding with a breach of warranty claim. Lochinvar Corp. v. Meyers, 930 S.W.2d 182 (Tex. App. 1996) ("Failure to notify the seller of the breach, thereby allowing the seller an opportunity to cure, bars recovery on the basis of breach of warranty."). Although the Texas Supreme Court has not decided whether a plaintiff must notify a remote manufacturer of a breach of warranty, the Texas Court of Appeals has expressly held section 2.607 requires a buyer to "give notice of an alleged breach of warranty to a remote manufacturer." U.S. Tire-Tech, Inc. v. Boeran, B.V., 110 S.W.3d 194, 199 (Tex. App. 1994). Fulfilling its duty of candor to the Court, Goodman cites a case that may contradict U.S. Tire-Tech and could be interpreted to suggest that a plaintiff does not need to notify a remote manufacturer before filing a breach of warranty claim. See Vintage Homes, Inc. v. Coldiron, 585 S.W.2d 886 (Tex. App. 1979). In Vintage Homes, the Texas Court of Appeals held that "the notice requirement of Section 2.607 applies only as between a buyer and his immediate seller." Id. at 888. However, the court also noted that buyer had expressed her "dissatisfaction" to the manufacturer and, even if notice were required, the buyer had given sufficient notice of her claim. Id.

In this case, plaintiff admits she did not notify anyone in the chain of distribution, including her immediate seller, that she was dissatisfied with her air conditioner. Texas law is clear that notice is required, at a minimum, to the direct seller, and the evidence shows that plaintiff did not comply with this requirement. TEX. BUS. & COM. CODE ANN. § 2.607(c)(1); U.S. Tire-Tech, 110 S.W.3d at 198-99. Even though the Texas Supreme Court has not addressed the precise issue of whether notice to a remote manufacturer is required before bringing a breach of warranty claim, the plain

11

language of section 2.607 and decisions of the Texas Court of Appeals provide sufficient guidance on this issue. Based on existing law, it is clear that plaintiff must notify someone in the distribution chain before proceeding with a breach of warranty claim. Other federal courts considering this issue under Texas law have reached the same conclusion. See Martin v. Home Depot U.S.A., Inc., 369 F. Supp. 2d 887 (W.D. Tex. 2005) (treating notice requirement as a condition precedent for a breach of express warranty claim under Texas law); In re Ford Motor Co. Speed Control Deactivation Prods. Liab. Litig., 2007 WL 2421480, *6-7 (E.D. Mich. Aug. 24, 2007) (notice is a condition precedent to breach of warranty claim under Texas law and buyer bears burden to allege that he or she has notified manufacturer of alleged defect). The evidence is clear that plaintiff did not notify Goodman or her immediate seller of the alleged defect before filing this lawsuit and summary judgment in favor of Goodman should be granted.

## C.

Goodman argues that the express terms of the warranty required plaintiff to present the defective part to Goodman during the warranty period, and plaintiff's failure to comply with the warranty bars her breach of warranty claim. Plaintiff does not address this argument in her summary judgment response and, at the summary judgment hearing, analogized the presentment requirement to the notice requirement. Defendant, however, argues that the plain language of the warranty shows that it was not a warranty that the product would be free from defect but, instead, a warranty that Goodman would repair any defective parts or workmanship upon presentation to Goodman.

Plaintiff admits that she did not present the allegedly defective parts to Goodman through a certified or licensed technician. In three different places, the warranty expressly required presentation of a defective part before the warranty could be breached. See Dkt. # 40-2, at 59 ("We

12

will exchange any warranted defective part upon its' [sic] presentation to our distributor by a certified or licensed technician."); ("We will exchange any warranted defective functional part or compressor that we furnished, upon presentation of said defective part to our distributor, by a certified or licensed technician."); ("Should you require in-warranty parts under the terms stated above, contact the installing dealer or contractor whose name appears on the reverse side of this certificate.  Should you be unable to obtain warranty parts through such installing dealer or contractor, contact the distributor listed on the reverse side of this certificate.").   The five-year warranty provided by Goodman was clearly a warranty for repair or replacement and required plaintiff to present any defective part for exchange before the warranty would be breached.

More plainly stated, plaintiff's breach of warranty claim can not survive summary judgment because she has failed to present evidence that Goodman actually breached the warranty. The Texas Supreme Court has upheld written notice or presentation requirements in express warranties and requires compliance with the terms of the warranty if such presentation is required. General Motors Corp. v. Garza, 179 S.W.3d 76, 82 (Tex. 2005); Austin Co. v. Vaughn Building Corp., 643 S.W.2d 113, 115 (Tex. 1982).  In this case, the warranty states that Goodman "will exchange any warranted defective part upon its presentation to our distributor by a certified or licensed technician." Dkt. # 40-2, at 59.  Even if the Court were to assume that notice is not a requirement under Texas law, presentation of the defective part was required under the warranty and plaintiff failed to comply with this requirement.  Plaintiff has provided no authority suggesting that the presentation clause of the warranty is unenforceable.  Therefore, plaintiff's failure to present the defective part or product to

Goodman during the warranty period bars her claim and summary judgment should be granted to defendant.[3]

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment and Memorandum in Support (Dkt. # 40) is **granted**, and Plaintiff's Amended Motion and Supporting Brief for Class Certification (Dkt. # 30) is **moot**. A separate judgment is entered herewith.

**DATED** this 27th day of June, 2008.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[3] Because the Court finds that defendant's motion for summary judgment should be granted, the Court does not need to reach the issue of class certification and plaintiff's amended motion for class certification (Dkt. # 30) is moot.